In 1859 the Western North Carolina Railroad Company constructed and erected its line of railway and depot on the land where the city of Hickory now stands, and began to operate its engines and cars, transporting freight and passengers thereon, and it and its successors have been in the continuous use and enjoyment of said railway and depot ever since.
At the time said line of railway was constructed and said depot erected there was no town where the city of Hickory now stands, there being at the time only three houses within the entire boundary of the present city of Hickory.
On 26 May, 1859, one Henry W. Robinson conveyed to the Western North Carolina Railroad Company a tract of land 400 feet wide by 500 feet in length, conveyance being in fee.
(191) This deed being lost, the said Henry W. Robinson on 10 March, 1880, executed a second deed to the Western North Carolina Railroad Company for a tract of land 400 feet wide by 500 feet in length, situate in the city of Hickory, which includes the roadbed and depot of the defendant, and which the defendant contends is the same land described in the first deed. This last deed recites the fact that it is executed as a "duplicate for a lost deed," but conveys the land "for the purpose of a public square around the depot for the free and common use of both railroad and the town of Hickory, not to be built up or exclusively *Page 153 
occupied by any one to the exclusion of the public as a free common." While the description of the land in the first deed is indefinite, it appears from the testimony of J. W. Cline that the description includes the identical land conveyed by the second deed if the station-house called for in the first deed is the station-house located in Hickory. It appeared that this lost deed was accepted by J. W. Wilson, then president of the Western North Carolina Railroad Company, for the said road, he writing on the back thereof the words following:
The original deed having been destroyed without record, this deed is accepted in lieu thereof. JAMES W. WILSON, President W. N.C. R. R. Co.
No authority on the part of James W. Wilson, president of the road, to accept the said deed was shown, and the minute-book of the board of directors of said company was offered in evidence, and this book showed no authority conferred upon him to accept said deed, and no ratification of his act in doing so.
The defendant contended that the said Wilson had no power to divest it or the Western North Carolina Railroad Company of any of the rights which it had acquired under the prior deed executed to it by the said Robinson.
It also contended that the said Wilson, acting as an officer of (192) said company, without an order of the board of directors, had no right to divest the company of the property which it had acquired under its charter by virtue of the location and construction of its railroad upon this land in 1859, and which was essential to the operation of the railroad, and that it was immaterial whether those rights were acquired under the deed or under the charter.
There was also testimony that since the location and construction of the said railway a large and populous town had sprung up upon the present site of the city of Hickory, which was first chartered in 1873, and that instead of three houses, now there are a large number and a population of nearly 4,000. That the streets of said town are so located near to the depot and across the track of the defendant that the passage of the defendant's trains interferes with the travel upon some of the streets, which is occasionally impeded and delayed by the movement of trains upon the defendant's track, and the construction and operation of the Carolina and Northwestern Railway Company through said town and the operation by it of a line of railway just north of defendant's depot prevents as convenient access to said depot as is desired by the citizens of said city. It was also in evidence that the noise, dust, smoke, soot, and cinders necessarily caused by the operation of defendant's trains and engines on its track and by the engines and cars of the Caroline *Page 154 
and North Western Railway on its track was an inconvenience to the citizens of said city passing on the streets of said city near to defendant's depot and track, and interfered with the repose of those of its citizens who had constructed their dwellings, business houses, and churches adjacent thereto.
It was further in evidence that the Corporation Commission had ordered "that the Southern Railway Company and the Carolina and Northwestern Railway Company shall provide adequate and safe (193) facilities for the handling of freight at Hickory, N.C. and that work to this end be begun within thirty days from this date," and that when this defendant began to obey this order by increasing its facilities for the handling of its freights, this action was begun against it alone, and it was enjoined and restrained from doing so.
Upon this state of facts, which substantially appears in the evidence and in the findings of fact made by the court, the court held that the plaintiff was not entitled to recover any of the land described in the complaint upon which the defendant's depot or track was built, or within 100 feet from the center of said track on either side thereof, and that on the other issues the plaintiff, on the evidence, was not entitled to a verdict. On this ruling and intimation from the court the plaintiff excepted and appealed.
The defendant further contended: The defendant is not a trustee for the plaintiff of the land described in the complaint upon which its railroad and depot is located, or within 100 feet on either side of the center of its track, for the following reasons:
(1) The Western North Carolina Railroad Company, by virtue of the location and construction of its roadbed and depot upon this land in 1859, became the owner under its charter (chapter 228, Laws 1854-'55) of all the land situated within 100 feet on either side of the center of its track, and entitled to use the same for corporate purposes whenever it desired to occupy the same; and the Southern Railway Company, as its successor, has succeeded to this right.
(2) The said company, by virtue of the deed of 26 May, 1859, became the owner of the whole of said land in fee, the vague description in the said deed being made definite by the specific description in the last deed, which refers to the former deed, reciting that it was executed in lieu thereof. The survey of the land shows that it is the same land.
(194) The deed before the Court is as follows:
STATE OF NORTH CAROLINA — Catawba County.
This deed, made this 10 March, 1880, by Henry W. Robinson (as a duplicate for lost deed) of Catawba County and State of North Carolina, *Page 155 
to the Western North Carolina Railroad (in trust as a "public square" to be used as a town common around the depot), Witnesseth:
That said Henry W. Robinson, in consideration of the purposes herein specified and the sum of $1 to him paid by the Western North Carolina Railroad Company, the receipt of which is hereby acknowledged, has bargained and sold and by these presents does bargain, sell, and convey to said Western North Carolina Railroad Company and its successors a lot of land in Catawba County, State of North Carolina, adjoining the lands of G. Marshall, Dr. J. R. Ellis, J. H. Burns, Hall Bros., and others, bounded as follows, viz.:
Beginning at a rock corner near the drug store now owned by Pink Warlick, 200 feet north of the center of the said Western North Carolina Railroad, and runs about south 400 feet, crossing the said railroad to a post or stake, corner of Dr. Ellis' and G. Marshall's lots; then west or parallel with railroad 500 feet to a stone or stake; then about north, crossing the railroad, 400 feet to a stone or stake 175 feet more or less east from Henry W. Link's corner, then east 500 feet to the beginning, for the purpose of a public square around the depot for the free and common use of both railroad and the town of Hickory, not to build up or be exclusively occupied by any one to the exclusion of the public as a free common.
To have and to hold the aforesaid tract or lot of land and all privileges and appurtenances thereto belonging, to the said Western North Carolina Railroad Company in trust as aforesaid for the (195) public uses and purpose aforesaid.
And the said Henry W. Robinson covenants that he is seized of said premises in fee and has right to convey the same in fee simple; that the same are free from all incumbrances, and that he will warrant and defend the said title to the same against the claims of all persons whomsoever.
In testimony whereof the said Henry W. Robinson has hereunto set his hand and seal, the day and year above written. HENRY W. ROBINSON. [Seal.] Attest: A. L. SHUFORD.
NORTH CAROLINA — Catawba County.
The execution of the foregoing deed from H. W. Robinson to the Western North Carolina Railroad Company was this 15 April, 1880, duly proved before me by the oath and examination of A. L. Shuford, subscribing witness thereto. Therefore, let said deed and certificate be registered. M. O. SHERRILL, Probate Judge. *Page 156 
The following statement of facts is taken from the defendant's brief:
Duplicate Deed. Henry W. Robinson to Western N.C. R. R. Co.
Deed — Consideration Public and $1. Dated 10 March, 1880.
Filed for registration 17 April, 1880, at 5 o'clock p. m., and registered in the office of the Register of Deeds of Catawba County, N.C. this 20 April, 1880, at 8 o'clock a. m., in Book 13 of Deeds, on pages 105-6. GEORGE W. COCHRAN, Register of Deeds.
(196) The original deed having been destroyed without record, this deed is accepted in lieu thereof. JAMES W. WILSON, President W. N.C. R. R.
The Western North Carolina Railroad Company, through which the defendant claims by succession, was originally chartered by chapter 228, Laws 1854-'55, of which sections 27 and 29 are essential in the consideration of this case. They are as follows:
"SEC. 27. Be it further enacted, That the said company may purchase, have and hold in fee, or for a term of years, any lands, tenements, and hereditaments which may be necessary for the said road, or the appurtenances thereof, or for the erection of depositories, storehouses, houses for the officers, servants or agents of the company, or for workshops or foundries to be used for the said company, or for procuring stone or other materials necessary for said company in the construction or repair of the road, or for effecting transportation thereon, and for no other purpose."
"SEC. 29. Be it further enacted, That when any lands for right of way may be required by said company for the purpose of constructing their road, or for any of the uses described in section 27 of this act, and for the want of agreement as to the value thereof, or from any other cause, the same cannot be purchased from the owner or owners, the said company shall have the same powers to condemn all such lands to individuals or corporations as may be needed for the aforenamed purposes as were granted in and conferred upon the North Carolina Railroad Company by their act of incorporation, and shall proceed to condemn such lands in the same manner and to the same extent under the like rules, restrictions, and conditions as are prescribed in the charter aforesaid for the government of the said company; and the said company (197) shall be entitled to hold in fee simple all lands belonging to the State, over and through which the said road may pass to an extent not exceeding 100 feet on either side of said road; and in the absence of any contract or contracts in relation to lands through which *Page 157 
said road may pass, it shall be presumed that the land over which said road may be constructed, together with 100 feet on each side thereof, has been granted by the owner or owners to the company, and the said company shall have good right and title thereto, and shall have, hold, and enjoy the same so long as it shall be used for the purposes of said road, and no longer, unless the owner or owners shall apply for an assessment of the value of said lands, as hereinbefore directed, within two years next after that part of said road has been located; and in case the owner or owners shall not apply within two years from the time aforesaid, he, she, or they shall be forever barred from recovering the same or having an assessment or compensation hereafter: Provided, that nothing herein contained shall affect the rights of infants, femes covert, persons non compos or beyond seas, until two years after the removal of their respective disabilities, and the same and all the estate aforesaid shall be exempt from taxation until the dividends or profits of said company shall exceed 6 per centum per annum."
The North Carolina Railroad Company, referred to in the above sections, was chartered under the name of the "North Carolina Central Railroad Company," by chapter 47, Laws 1836-'37, reprinted in the Revised Statutes at page 405. Section 9 of said act is alone essential in the consideration of this case. It is as follows:
SEC. 9. Be it further enacted, That if the president and directors cannot agree with the owner of land through which it may be necessary to make the said railroad, as to the terms upon which the said railroad shall be opened through the same, then it shall be (198) lawful for the said president and directors to file their petition in the Court of Pleas and Quarter Sessions of the county wherein the land lies, under the same rules and regulations as are now prescribed by law in laying off public roads; and upon the filing of said petition, the same proceedings shall be had as in cases of public roads; and when the jury shall have assessed the damages to be paid to the owners of the land through which the same shall be laid off, then it shall be lawful for the said president and directors, upon payment to the owner or owners of said land, his, her, or their guardian, as the case may be, or into the office of the clerk of the Court of Please and Quarter Sessions of the county wherein the land lies, the sum or sums so assessed, to enter upon the land laid off, and construct the road thereon; to make all necessary excavations and embankments, and all other structures necessary to the construction and preservation of said road; and to hold the said land to their use and benefit during their corporate existence; and in all things to have the same power and authority over said land so laid off, during their existence as a corporation, as though they owned the fee simple therein: Provided, that nothing in this act contained shall be *Page 158 
so construed as to give power to said company to lay off said road through the yard, garden, or burial ground attached, or appurtenant to the dwelling-house on any plantation through which it may be deemed necessary to lay off said road, without the consent of the owner thereof."
Section 11 gives the company the right to purchase lands not exceeding ten acres in any one tract. Section 27 confers the right to condemn "such quantity of ground, not exceeding one acre at any one place, as may be necessary for a tollhouse," etc., prescribing much the same method of condemnation as section 9. These are evidently the sections referred to in the charter of the Western North Carolina Railroad Company, and must be taken as an essential part thereof.
From the judgment the plaintiff appealed. (199)
After stating the case: It is important that we should in the beginning ascertain the relief sought in this action. It is thus stated in the prayer of the complaint: "That the defendant, its agents, officers, employees, servants, representative, and any person or persons acting by or under any contract or agreement with it, be perpetually enjoined from erecting any building, platform or any other structure whatever or any part thereof within that boundary of land in the city of Hickory, Catawba County, North Carolina, referred to and described in Exhibit `A,' which is a part of this complaint." No other specific relief is demanded beyond the costs of the action. In our opinion the plaintiff was entitled thereto, irrespective of any question of nuisance, upon which we do not care to intimate an opinion. If that question is to be decided by this Court, it can be more clearly presented free from complications as to title to land.
The vital defect in the defendant's case is the assumption that its charter gives it a right of way including 100 feet of land on each side of its track. The charter does not and could not give any land whatever except such as belongs to the State. All that it does, or pretends to do, is to give to the company the right to acquire by purchase or condemnation such lands as may be necessary for its essential purposes. It does not prescribe any fixed width for its right of way, for the evident reason that the company might need more land at one place than another; and that where the land was valuable, the company would not care to pay for more than it actually needed. The charter gives to the company "in fee simple all lands belonging to the State (200) over and through which the road may pass to an extent not exceeding *Page 159 
100 feet on either side of the said road." Beyond this, it is evident that its charter contemplates that all lands taken but not freely given shall be paid for in full; and that an effort to purchase shall be made before condemnation. It expressly provides in section 29 that when the necessary lands "cannot be purchased from the owner or owners, the said company shall have the same powers to condemn all such lands belonging to individuals or corporations as may be needed for the aforementioned purposes as were granted to and conferred upon the North Carolina Railroad Company by their act of incorporation, and shall proceed to condemn such lands in the same manner and to the same extent under the like rules, restrictions, and conditions as are prescribed in the charter aforesaid." The charter of the North Carolina Railroad Company gives it right of entry upon the lands so condemned only after payment to the owner of the land or into the office of the clerk of the court of the full amount of the assessed damages.
It is true, the charter of the Western North Carolina Railroad Company provides that "in the absence of any contract or contracts
in relation to lands through which said road may pass, it shall bepresumed that the land over which said road may be constructed, together with 100 feet on each side thereof, has been granted by the owner or owners to the company, and said company shall have good right and title thereto, and shall have, hold, and enjoy the same so long as it shall be used for the purposes of said road, and no longer, unless the owner or owners shall apply for an assessment of the value of said lands, as hereinbefore directed, within two years next after that part of said road has been located," etc. This creates the presumption of a grant, founded upon the idea that the continued failure of the owner for two years after the building of the road to bring an action for (201) damages would indicate that he had sold or voluntarily donated the land to the company. We think his Honor properly construed the word "location" as meaning the physical location of the road, that is, the laying of its track, and this construction does not seem to be doubted by counsel. Any other would lead to the most absurd results. We know that many roads are surveyed and located that are never built, or built long years thereafter. To say that a railroad company can, by a mere abstract location of its route, without building its road, come twenty-five or thirty years thereafter and take private property, without the pretense of compensation, under an irrebuttable presumption resting merely on a row of rotten stakes, would be too great a strain upon judicial construction. However, this is not contended for by the defendant. It is admitted that the original deed was dated 26 May, 1859, and that the said line of railway was constructed and said depot erected during the same year, but during what month *Page 160 
does not appear. If this were material, the burden of showing when the road was built would rest upon the defendant, as the fact would necessarily be within its peculiar knowledge. But it is not material, as it is evident that the deed was, in any event, executed within two years after the building of the road, which prevents the presumption from ever arising under the express terms of the statute. The word "unless" used in the act is thus defined by Webster: "Unless; upon any less condition than (the fact or thing stated in the sentence or clause which follows); if not, supposing not; if it be not; were it not that." The Century Dictionary defines the same word as follows, omitting some secondary meanings: "If it be not that; if it be not the case that," etc. These definitions clearly indicate a negative condition precedent, as much so as the condition in a mortgage that "unless" the money is paid, or "if it be not" paid by a certain day the land may be sold. (202) If the money is paid on or before the day limited, the mortgagor is in no default whatever and the power of sale never arises.
The defendant has placed itself in the peculiar position of claiming both under the deed and under the presumption. We have seen that if there is a deed there can be no presumption. These are not inconsistent defenses, but are inconsistent claims of right, under which it seeks to maintain its easement. It is admitted that the fee to the land was in Robinson, and if it did not pass out of him by virtue of the deed it must still remain in him or his heirs.
It appears that the original deed was lost and that the deed of 10 March, 1880, was executed and accepted as a "duplicate" thereof. This is expressly stated in the duplicate deed which was accepted by the defendant and filed for registration on 17 April, 1880. This is, of course, an admission of the execution of the original deed.
The defendant contends that (quoting from defendant's brief) "It was not in the power of the president of the road to part with the title which the road had acquired to the land under the first deed." It does not appear that he did so. The first deed is not in the record. On the contrary, it was admitted by the grantee to have been lost or destroyed, and a duplicate deed accepted in lieu thereof. Both the defendant and the original grantee were corporations — artificial persons who were utterly incapable of any action whatever except through agents. The law evidently contemplates that a railroad company shall have an agent to make and receive contacts as to the right of way, and in the absence of specific provisions to the contrary it seems to us that those powers would come peculiarly within the duties of the president, the official head and general representative of the company.
The defendant also contends that the original grantee acted (203) ultra vires in consenting to act as trustee. We do not think so, *Page 161 
as it took the legal title in trust for itself as well as the public. It was not a naked trust, but one coupled with a beneficial interest that was in furtherance of its essential purposes. But if it were otherwise it would not help the defendant, as no trust is permitted to fail merely for want of a trustee. This is common learning.
The record states that "The defendant in open court agreed that it did not claim any part of the land described in the deed and the plants, except the main track and 100 feet on each side from the center of the track, and that it stood ready to have it so decreed by the order of the court." It is difficult to discover what this means, unless it is an attempt to repudiate the deed under which the land was acquired, and, after thus holding it for over forty-five years, create nunc pro tunc a presumption of a grant, which by the express provisions of the statute can never arise in the face of a contract. This cannot be permitted.
We have cited no authorities, because the decision of the case depends upon the plain wording of the statute and of the deed. The defendant has nothing more than belonged to the original company, which, acquiring the land under a deed the mere existence of which prevented the presumption, holds in accordance with the terms of the deed, which is its only muniment of title. Consequently there was error in the intimation of the court below. As the facts are now presented to us, a permanent injunction should have been granted in accordance with the prayer of the plaintiff.
Error.
Cited: S. c., 138 N.C. 313; S. c., 141 N.C. 718, 719; S. c.,143 N.C. 451.
(204)