HICKORY v. RAILROAD.

(Filed May 29, 1906).

*Railroads—Enlargement of Freight Depot—Nuisance—Injunction—Municipal Corporations.*

1. In an action to enjoin the enlargement of a freight depot in the centre of a city, the railroad cannot complain of a charge that if the enlargement would seriously interfere with the streets by obstructing them for an unreasonable portion of time or render it unsafe for travelers to cross the railroad at public crossings, it would be a public nuisance, but if it would merely give inconvenience to the public or cause some delay, incident to the operation of a railroad, it would not be a nuisance.

2. A municipality is a proper party to institute an action to prevent a public nuisance by the proposed enlargement of a freight depot in the city.

HICKORY *v.* RAILROAD.

ACTION by City of Hickory against Southern Railway Company, heard by *Judge Charles M. Cooke* and a jury, at the February Term, 1906, of the Superior Court of CATAWBA. From the judgment rendered, both parties appealed.

*E. B. Cline, T. M. Hufman* and *Self & Whitener* for the plaintiff.

*Witherspoon & Witherspoon* and *S. J. Ervin* for the defendant.

PLAINTIFF'S APPEAL.

CLARK, C. J. This is an action to restrain the defendant from enlarging its freight station in the town of Hickory, the plaintiff alleging that the increase in traffic and shifting of more trains would make it a nuisance and dangerous, and averring that the defendant can and should locate a building to accommodate its increased traffic at some point further off and not enlarge its present building in the center of the growing and populous town. Both parties appeal, but the whole matter can be treated in one opinion.

Three main questions are presented: (1) The title to the lot in controversy. (2) Whether the proposed addition of 70 feet at the end of defendant's depot will be a nuisance which the courts can and should enjoin, and (3) Whether the plaintiff can maintain this action.

The defendant claimed title as follows: (1) A deed by H. W. Robinson and several others, 9 November, 1855, granting to the Western North Carolina Railroad Company a right of way over their respective lands wherever situated, the same to be "so much and no more of said lands" than said company "would have the right to condemn for its use," under the provisions of its charter. It is admitted that H. W. Robinson was the owner of the lot in question, that the defendant had succeeded to all the rights and property of said

Western North Carolina Railroad Company, and that the right of condemnation extended to 100 feet on each side of the track.

(2) A deed from H. W. Robinson to the Western North Carolina Railroad Company 26 May, 1859, and recorded in November, 1905.

(3) The defendant further relies upon section 29, chapter 228, Acts 1854-55 (the charter of the Western N. C. R. R. Co.), which is a provision that "in the absence of any contract" for the right of way, the construction and operation of the road for two years without claim shall bar any action for any land covered by the right of way. The railroad was constructed at this point in the fall of 1859 and has been in operation ever since.

(4) A deed from H. W. Robinson, 10 March, 1880, to the Western N. C. Railroad Co., for a lot 400 by 500 feet, giving specific boundaries and embracing the station as its central point, conveying said property "for the purpose of a public square around the depot for the free and common use of both railroad and the town of Hickory, not to be built up or exclusively occupied by any one, to the exclusion of the public as a free common." This deed was drawn by the president of the Western N. C. Railroad Co., who endorsed thereon, "The original deed having been destroyed without record, this deed is accepted in lieu thereof." This deed was proved and recorded in April, 1880. The deed of 1855 was not presented in the evidence when this case was before us (137 N. C., 189,) and this point was not passed upon.

We think, therefore, the court did not err in instructing the jury, as a matter of law upon all the evidence, to find that the defendant owned the 100 feet on each side of the railroad by virtue of the deed of 1855, and that it did not hold that part of the lot in trust for the town, and the jury found under proper instructions that the defendant held the balance of the lot under the trust set out in the deed of 1880 (No. 4 above). As to these findings, except the last, the defendant

does not appeal, but that exception is without merit since it was adjudicated in the former appeal (137 N. C., 189). Indeed, it is stated in this case (137 N. C., at p. 203,) that the record shows "the defendant in open court agreed that it did not claim any part of the land described in the deed and plats, except the main track and 100 feet on each side from the center of the track, and that it stood ready to have it so decreed by the order of the court."

This disposes of the plaintiff's appeal.

## DEFENDANT'S APPEAL.

As to the defendant's appeal: It appeared in evidence that the present freight depot is too small to store the goods shipped over the road, and that in consequence a great number of cars constantly stand upon the side tracks; also, that upon complaint made and after due investigation the Corporation Commission in December, 1903, adjudged "that the present depot facilities at Hickory for the handling of freights are insufficient and inadequate, and as at present operated are *unsafe,*" and ordered that the defendant should "provide adequate and *safe* facilities for the handling of freights" at Hickory. From this order the defendant did not appeal and notwithstanding the adjudication that the handling of freight at the present location, in the center of the town, was unsafe, the defendant was proceeding to enlarge its warehouse; whereupon this action was begun not to compel a removal of the warehouse now there, but to require that the additional facilities should be erected at a point where the increasing freight traffic and additional cars used might be shifted and handled without danger and delays to those crossing constantly from one side of the town to the other. There was ample evidence of the many dangers and inconveniences to the people of the town arising from the handling of the volume of freight at that point at present, and the certainty of

increased danger in the future, both from the steady increase in the volume of freight and from the great increase of population in the town, and there was evidence of many eligible locations in or near the edge of the town where the defendant might readily locate its freight depot, separate and apart from its passenger station, as is now usual at all other towns of any size.

The court charged the jury that if "the enlargement of the defendant's present freight depot by an extension on the eastern side" would "seriously interfere with and interrupt the streets of the town which are in general use and necessary for the convenience of the citizens and for the business in respect of travel or course of business, either by obstructing the streets for an unreasonable portion of the time, or by having it so that travelers along said streets, which cross the railroads at public crossings, cannot, by the exercise of reasonable, ordinary care, with safety pass over such crossings, that they should find as to that issue that the enlargement would be a public nuisance. But that if it would merely give inconvenience to the public or cause some delay in their movements, which is incident to the operation of a railroad, it would not be a nuisance." The defendant has no just ground of exception to this charge. The jury found that the proposed enlargement would be a public nuisance.

Railroads are chartered for the public convenience and are operated by the exercise of a public franchise. Such exercise must be subordinate to the public welfare, and they are subject to public regulations as to their charges and conduct. If they exercise their functions in such manner as to become a public nuisance, they are liable to damages or to injunctive relief. The operation of their freight business, growing rapidly as it is shown to be, in the center of a large and growing town, will necessarily impede and render dangerous the circulation of the people and business from one side of the town to the other. It necessitates the keeping of many

box cars on the side tracks and their constant shifting up and down, cutting off the view of approaching passenger and indeed of other freight trains. The jury has found this dangerous, inconvenient and a public nuisance. Indeed we might almost say that it would be a matter of common knowledge. If there are any good reasons why the defendant should have resisted the application of the town authorities and should not rather have anticipated the public wishes and convenience, by removing its freight depot to a more suitable location, they do not appear in this record.

The plaintiff, acting through its official board, was a very proper party to institute this proceeding to render the passage of its streets across the railroad track safer, and prevent their obstruction by shifting freight cars. While any citizen might have recovered damages by showing that the enlargement of the depot was a nuisance to him *(Railroad v. Church,* 108 U. S., 317,) it is especially appropriate that this action to prevent a public nuisance should be brought by the municipality in the interest of all its citizens.

While this judgment, which we affirm, restrains only the addition to the freight depot, it is to be presumed that the defendant will not only place the building and side tracks to give the additional freight facilities ordered by the Corporation Commission at a more suitable spot, where they will not be so dangerous and will not interrupt the traffic of the town, but that it will remove all its freight business to that point.

As to both appeals, we hold that there is

No Error.