HICKORY v. RAILROAD.

(Filed December 22, 1906).

*Nuisances—Injunctions—Freight Depot—Gates.*

1. An injunction will be denied in advance of the creation of an alleged nuisance when the act complained of may or may not become a nuisance according to circumstances, or when the injury apprehended is doubtful, contingent or eventual merely.

2. A decree of the Superior Court enjoining defendant from enlarging its freight depot upon a finding by a jury that such enlargement will constitute a public nuisance, will be modified so as to permit defendant to remedy and guard against any possible danger to persons crossing its tracks by erecting suitable gates across the street and by providing a gateman.

CLARK, C. J., dissenting.

THIS is a petition by the defendant to rehear this case, reported in 141 N. C., 716.

*W. B. Rodman* for the petitioner.
*Self & Whitener* and *T. M. Hufham, contra.*

BROWN, J.   This case is reported in 141 N. C., at page 716.  Upon careful consideration of the petition to rehear the same, we are of opinion that the decree of the Superior Court

should be modified. The action was brought to enjoin the defendant from erecting an addition of seventy feet to its freight warehouse on its property in the city of Hickory, upon the ground, as indicated by the pleadings and plaintiff's evidence, that it would create a public nuisance by obstructing the view along the railroad tracks and thereby make it dangerous for persons to cross defendant's tracks at Marshall Street. The following is the material issue submitted to the jury: "Will the enlargement of defendant's present freight depot by an extension on the eastern side thereof constitute a public nuisance? Answer: Yes."

When the fact of nuisance is established by the verdict of a jury, the ordinary judgment is that the defendant be required to abate it. It is not always that the "far-reaching arm of the chancellor"—the writ of injunction—will be extended even then. The general rule is that an injunction will be denied in advance of the creation of an alleged nuisance when the act complained of may or may not become a nuisance according to circumstances, or when the injury apprehended is doubtful, contingent or eventual merely. That is the universal law in all the courts in this country. See 21 Am. and Eng. Encyc. Law (2d Ed.), 705, where the cases are collected from all the States. Mr. High also states the law to be without a discordant note, that when the injury complained of is not an existing nuisance *per se,* but may or may not become so according to circumstances, and when it is uncertain, "or productive of only possible injury," equity will not interfere. In support of that he cites thirty-odd cases, two being from this State. All the decisions in this Court support the rule referred to. *Simpson v. Justice,* 43 N. C., 115; *Barnes v. Calhoun,* 37 N. C., 199; *Wilder v. Strickland,* 55 N. C., 386; *Ellison v. Commissioners,* 58 N. C., 57; *Walton v. Mills,* 86 N. C., 280; *Dorsey v. Allen,* 85 N. C., 358. In the latter case *Chief Justice Smith* says:

"While it is true that a business lawful in itself may become so obnoxious to neighboring dwellings as to render their enjoyment uncomfortable, whether by smoke, noxious and offensive odors, noise, or otherwise, and justify the protecting arm of the law, yet there must be the *ascertained and not probable effects apprehended.* When the anticipated injury is contingent and possible only, or the public benefit preponderates over the private inconvenience, the Court will refrain from interfering."

In *Barnes v. Calhoun, supra,* an action to restrain the erection of a mill, *Gaston, J.,* says: "But it (a court of equity) will only act in a case of necessity when the act sought to be prevented is not merely probable, but undoubted, and it will be particularly cautious thus to interfere when the apprehended mischief is to follow from such establishments and erections as have a tendency to promote the public convenience."

Mr. High, in his work on Injunctions, also says: "When an injunction is asked to restrain the construction of works of such a nature that it is impossible for the Court to know until they are completed and in operation whether they will or will not constitute a nuisance, the writ will be refused in the first instance." Secs. 488 and 489, note 1.

It seems to us that Mr. Elliott has given us the true and just rule which should guide us in the disposition of this case, fair to plaintiff and defendant alike. He says: "Where a street is laid out across the right-of-way of a railway company at a point where the company has only one track, no question can justly arise as to the impairment of the company's franchise by such taking, for under such circumstances both the use as a highway and the use as a railroad can stand together, and do not interfere with each other." Elliott on Railroads, sec. 1104.

The extension of defendant's warehouse and the safe use of Marshall Street can easily coexist. The defendant can readily construct gates across the street for the protection of persons crossing the tracks from injury by its trains. There is no evidence that the defendant will not do this, and it can be compelled to do so by this Court by order in this case. This Court can direct a mandatory injunction compelling defendant to establish such gates and provide such gatemen as are usual at much-frequented crossings, or it can direct that the defendant be enjoined from building the extension until it does erect such gates. It must be admitted that this will afford the most perfect relief, and that conditions would be much safer than they now are or ever have been since the street was opened.

We must take it as true that the record discloses the only purpose for which the suit is brought, viz., to lessen the danger to passers and traffic along Marshall Street. The modification of the decree affords the most perfect safety possible. It is a method of safety universal in this country. We have a direct authority in this State for such an order. *Hyatt v. Myers,* 71 N. C., 273. In that case the nuisance complained of was a steam-mill across the street from plaintiff's residence. The fact of an existing nuisance was established by a jury. The Court, notwithstanding the verdict, declined to enjoin the defendant, but directed him, *of its own motion,* to raise his smokestack twenty feet and to attach spark-arresters thereto, or otherwise to abate the nuisance. So, if defendant's freight station was already extended, and an existing nuisance and danger as alleged, and the fact so found, the defendant should be allowed to abate the nuisance by establishing protecting gates. It cannot abate it now, because it does not exist.

In *Hyatt v. Myers,* 73 N. C., 233, *Chief Justice Pearson* states the law to be that, even after a verdict establishing a

nuisance, equity will not necessarily enjoin. The application of that remedy will always depend upon circumstances, the chief of which is, "Can the trouble be otherwise remedied?" This case is cited and affirmed in *Brown v. Railroad,* 83 N. C., 130, by *Judge Dillard,* who holds in substance that equity will not enjoin, even after verdict establishing it, unless the nuisance is irreparable, or one "which cannot be otherwise relieved against." To the same effect is Story Eq., sec. 925; Adams Eq., 211; 3 Daniel Chancery, 1587. In *Simpson v. Justice,* 43 N. C., 120, *Chief Justice Pearson* says that the jurisdiction of courts of equity to interfere by injunction in cases of this kind should be exercised "sparingly and with great caution." "There is," says that eminent Judge, "an obvious difference between a thing which is a nuisance itself, and one which may or may not be a nuisance according to the manner in which it is used."

We, therefore, think it proper to direct a modification of the decree of the Superior Court so as to permit the defendant to remedy and guard against any possible danger to persons crossing its tracks at Marshall Street by erecting suitable gates or barriers on its right-of-way across said street, and to provide a gateman, as is usual and customary at all dangerous and much-frequented railroad crossings in cities and towns. Said structure shall be such as is reasonably sufficient to afford protection to persons using said crossing from injury by passing trains and to be maintained by the defendant.

Upon presenting its petition to the Superior Court and satisfying the Judge thereof that defendant has fully complied with the decree as modified and amended, the perpetual injunction enjoining defendant from extending and enlarging its freight depot shall be vacated.

As to the other contention of defendant relating to the title to certain land, we will add nothing to what is said in

the opinion at the last term. We, generally, affirm the judgment subject to the modification made.

Let the costs of this rehearing be equally divided between plaintiff and defendant.

Former Decree Modified.

CLARK, C. J., dissenting. This is a petition to rehear this case, which was finally decided 141 N. C., 716, by a unanimous Court. It has twice before been before the Court, 137 N. C., 189, and 138 N. C., 311.

When the depot was put up in Hickory in 1859, nearly half a century ago, it was located in the woods. Now it is a growing, thriving town. The people there have not asked for the removal of the passenger station, nor in this action even that the freight depot now there should be removed; but they first asked the defendant for additional freight facilities. This not being granted, they applied to the Corporation Commission, who three years ago, in December, 1903, ordered additional freight warehouse room. Instead of putting this additional freight warehouse out in the edge of town, as is usual, where the many tracks and shifting requirements could be provided for, the defendant insisted on enlarging the freight warehouse in the center of the growing town, with the evident result of greater interference with the transit of people and traffic from one side of the town to the other by long strings of box-cars and the necessary shifting and moving thereof and the imminent danger to the lives and limbs of the citizens in traveling along their own streets, going across the tracks. Among instances of such results where the railroad has persisted in keeping its freight tracks within the populous part of the town is *Wilson v. Railroad,* 142 N. C., 346.

The passenger station is not so objectionable in the heart of the town, for those trains are very short (compared with

the length of freight trains), make short stops, and pay some attention to a schedule—and do not cut out and leave cars, and transfer them (for Hickory is a junction point with another railroad), as is necessary with freight trains which come at any hour, day or night, remain an unconscionable time, and are moved back and forward to the greatest danger of the lives and limbs of citizens passing from one side of the town to the other.

The defendant's counsel have argued this case as if the addition of seventy feet to the warehouse, with the additional obstruction to the view of those passing across the track, was the whole of the evil sought to be prevented. The Corporation Commission having three years ago ordered additional facilities (an order which the defendant must some day comply with in spite of all the delays incident to this protracted proceeding), if these additional facilities are given by making this addition of seventy feet to the freight station now in the heart of the town, the result will be a permanent and every year greater increase in the number of freight trains, standing for unlimited time, upon the tracks and sidetracks in the very center and heart of the town, moving and shifting, cutting out and putting in freight cars, severing one-half of the town from intercourse with the other, except at imminent and deadly peril of life and limb.

The affidavit for the injunction in this case alleges the above facts, and that if the proposed addition to the warehouse is not enjoined the persons using said streets crossing the tracks "will have no means of ascertaining when they can cross the tracks of the defendant over said streets, and will use the same in *constant menace of loss of both life and property,* and the situation so created will become a *veritable death-trap,* and that such building and platform will constitute a public nuisance of the worst kind," and if permitted to be erected and maintained will expose the plaintiff to

numerous, repeated, and expensive actions for damages for injuries to persons using said streets. The complaint reiterates this allegation, and avers that "the defendant operates a large number of local and through freight trains in said city, which trains are run at all hours of the day and night; that said trains are almost constantly and for long periods of time shifting and running backward and forward upon the tracks of defendant adjacent to said freight depot, and that persons about said passenger depot or engaged in loading or unloading freight are exposed to constant inconvenience and great peril by reason of the danger of their being run down by said trains to the injury of themselves and the destruction of their property; and the space between the defendant's tracks and its freight depot is so narrow, confined and inadequate that it is utterly impossible for shippers or receivers of freight to gain access to said freight depot without endangering themselves and their property," and that the above stated frequent shifting and moving of freight trains (which will not only continue, but be increased if the additional freight facilities ordered by the Corporation Commission are given by adding to the present freight warehouse in the heart of the city) are a constant menace to the lives of those going to the passenger depot or crossing the track, the long line of freight cars, besides the additional length of the warehouse, cutting off the view of approaching trains.

There was ample evidence to support the above state of facts, which would be almost a matter of common knowledge, upon proof of the location and attending circumstances, for the streets and railroad tracks cross upon the same grade.

The plaintiff offered proof of many tragedies that have occurred at that spot by reason of above matters, but was stopped by objection from the defendant.

The Judge charged the jury: "A nuisance like the one complained of is the maintenance of a condition which

seriously interferes with and interrupts the use of a street or the streets of a town, which are in general use and necessary for the convenience of the citizens and for the business in respect of travel or course of business either by obstructing the streets for an unreasonable proportion of the time, or by having it so that travelers along said street or streets, which cross the railroad at public crossings, cannot, by the exercise of reasonable, ordinary care, with safety pass over such crossings. But if the condition merely gives inconvenience to the public, or causes some delay in their movement, which is incident to the operation of the railroad, this does not constitute a nuisance. If the jury shall find that the building the proposed extension on the east end of the freight warehouse of seventy feet will so change the condition in respect to Marshall Street crossing that it will not be reasonably safe for persons exercising reasonable care, that will be a nuisance, and the jury should answer the fourth issue 'Yes.' " The jury so found.

The defendant cannot complain of this charge. If the proposed addition to the warehouse at that spot will increase the danger to the citizens, by the retention and increase of the freight trains shifting or halted on the track as well as by the added obstruction of the view, the court of equity must restrain the commission of the threatened act.

Railroads are chartered primarily for the public benefit and convenience. The emoluments and enrichment of their owners are secondary in law, though, of course, the primary object with those who promote and operate these *quasi*-public corporations. It is now well settled that their rates and management are matters of public investigation, regulation and control. They must exercise the public franchises granted them to further and advance the public welfare. At last term, 141 N. C., 721, we intimated the opinion that when the defendant erected the additional freight facilities

required by the order of the Corporation Commission at some more suitable and less dangerous locality, it should remove all their freight business to that point.

"Legislative authority to a railroad company to bring its tracks within municipal limits does not confer authority to maintain a nuisance." *Railroad v. Baptist Church,* 108 U. S., 317, which has been quoted and followed, *Thomason v. Railroad,* 142 N. C., 300. The right to operate its trains through Hickory does not give it the right to unnecessarily imperil the lives of citizens of the town by shifting and moving its freight trains at a frequented center when this can be done without loss at a more suitable point. *Sic utere tuo ut alienos non laedas.* The erection of gates is not suggested by either party, and will be only a less public nuisance than the present situation. They will obstruct the use of the streets more and more as population increases, and injuries will occur, especially at night, for they will not be always carefully guarded.

As to the other point presented in the rehearing, it is immaterial to the decision of this case and the injunction which is the object of it, whether the defendant owns 100 feet on each side of the track or 400 feet width at this point.

The proposed extension of the warehouse is up and down the track, and cannot be affected by that question in the least. If the defendant owned 400 feet it could not use it for other purposes than as at present. While adhering to the correctness of the result reached on that point in the decision rendered more than two years ago, 137 N. C., 203, and twice reiterated since, it may be well to recall that the defendant itself took the same view, and, as stated 137 N. C., at p. 203, the record shows that "the defendant in open Court agreed that it did not claim any part of the land described in the deed and plats, except the main track and 100

feet on each side from the center of the track, and that it stood ready to have it so decreed by order of the Court." In so doing, the defendant only agreed to what was its valid claim.