THE CITY OF BUSHNELL, Plaintiff in Error, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Defendant in Error.

*Opinion filed June 18, 1913—Rehearing denied October 14, 1913.*

1. NUISANCES—*city cannot declare that to be a nuisance which is not, in fact, a nuisance.* The law authorizes a city to declare what shall be a nuisance; but this does not authorize it to act arbitrarily, and declare that to be a nuisance which is not, in fact, a nuisance.

2. SAME—*when city's determination that a thing is a nuisance is conclusive.* Where a thing is of such a character that in its nature it may be a nuisance but as to which honest differences of opinion may exist among men of impartial minds as to whether it is actually a nuisance or not, the determination of a city that it is a nuisance is conclusive.

3. SAME—*when city's declaration that thing is a nuisance is not conclusive.* Where a thing is not, in its nature, a nuisance but may become so by reason of its locality, surroundings or the man-

ner in which it is conducted, the city can only declare it to be a nuisance if it is, in fact, a nuisance.

4. SAME—*railroad cannot be compelled to abandon the use of tracks on mere declaration of city that such use is a nuisance.* A railroad company which has acquired the right to cross the streets of a city cannot be required to take up its tracks or abandon the use of the streets upon the mere declaration of the city that such use is a nuisance.

5. SAME—*how ordinance should be framed where thing is not, in its nature, a nuisance.* Where a thing is not, in its nature, a nuisance but may become so under certain circumstances, an ordinance intending to declare the thing a nuisance under such circumstances should be directed against the circumstances which create the nuisance and not against the thing itself.

6. SAME—*what does not show that a thing is a nuisance.* The fact that damages may be recovered by a property owner who is injured by a structure or business does not show that such structure or business is a public nuisance.

7. SAME—*question whether ordinance is valid cannot be left to the jury.* An ordinance declaring a thing which is not a nuisance *per se* to be a nuisance, is, if valid, a law within the municipality, and the question of its validity cannot be left to the jury as a question of fact depending upon the evidence in a particular case, but the only question for the jury is whether the evidence establishes a violation of the terms of the ordinance.

8. SAME—*effect where preamble of ordinance recites manner in which use of switch tracks is offensive.* A preamble which recites the manner in which the use of switch tracks is productive of public injury and annoyance amounts to no more than a statement of the reasons for enacting the ordinance, and is of no effect where the ordinance does not declare the use of the tracks in the manner specified in the preamble to be a nuisance, but declares to be a nuisance any use of such tracks for switching, storing, loading or unloading cars within a business district created by the ordinance.

9. SAME—*an ordinance declaring switch tracks in business district a nuisance is invalid.* A city, under its police power, may declare under what circumstances and conditions the maintenance and operation of switch tracks shall be a nuisance, but an ordinance which merely established a "business district," within the limits of which the use of switch tracks or sidings for setting out, switching, storing, making up or passing freight cars, freight trains or engines, or for loading or unloading freight cars, is declared to be a nuisance, is invalid.

FARMER and VICKERS, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of McDonough county; the Hon. HARRY M. WAGGONER, Judge, presiding.

R. E. LYBARGER, City Attorney, and FLACK & LAWYER, for plaintiff in error.

JOSEPH A. CONNELL, and GEORGE D. TUNNICLIFF, (CHESTER M. DAWES, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Chicago, Burlington and Quincy Railroad Company was sued by the city of Bushnell for a violation of a city ordinance. On the trial the circuit court sustained an objection to the introduction of the ordinance in evidence and directed a verdict of not guilty. The validity of the ordinance being involved, a writ of error has been sued out of this court, the trial court having certified that the public interest so required.

The ordinance was passed and duly published in May, 1912. It established within the city a business district, within whose limits the maintenance or operation of any siding or switch track for setting out, switching, storing, making up or passing freight cars, freight trains or engines used therewith, or for loading or unloading freight cars or trains, was declared to be a nuisance, for the maintenance of which a penalty was imposed.

The right of way of the railroad company, 250 feet wide, was acquired in 1853 and 1854, before the city of Bushnell was laid out. It runs from north-east to south-west, and when the city was laid out a street was located adjoining the east side of the right of way and another adjoining the west side, called, respectively, East Main street and West Main street. Hail, Hurst and Barnes streets crossed East and West Main streets and the right of way at right angles, Hail being the farthest north and Barnes the farthest south. The right of way from Hail street to

·Barnes street was within the business district. İt was stipulated that the railroad company has used its right of way through said district for more than forty years, during which time it has maintained thereon one main track and three switch tracks, to which were added, in 1910, another main track and another switch track; that for more than forty years it has maintained a freight depot on its right of way between Hurst and Barnes streets, where it received, loaded and unloaded freight; that on the west side of its right of way there is a lumber yard just north of Hail street and another just south of Barnes street, and on the east side of the right of way a grain elevator just north of Hail street, the ground on which the lumber yards and elevator are situated being leased from the railroad company. It was also stipulated that the city of Bushnell is a prosperous, growing city, having a population of about 2700 persons and large and diverse business interests of great value; that the business houses face East and West Main streets in about equal numbers from Hail to Barnes street, and consist, in part, of an opera house, a hotel, banking house, restaurants, stores for the sale of merchandise, barber shops, printing offices, and offices of lawyers, doctors, dentists, commission merchants and brokers; that Hail, Hurst and Barnes streets are the streets most generally used; that they connect the main business portions of the city, and are the most convenient and practicable means of passing back and forth in the business portion of the city. The city introduced evidence to prove that 2000 or 2500 people cross the railroad at Hurst street every day and as many more at the other two crossings; that from seven o'clock in the morning to nine o'clock at night the streets are obstructed by cars and engines on switch tracks from a fifth to a third of the time, and cars almost continually stand so near the street crossings as to obstruct the view of approaching trains; that all the coal unloaded is unloaded in the business district, and that the unloading of coal and

the operation of cars and engines in switching make so much dust and smoke that business houses are at times obliged to close their doors, and so much noise that doors have to be closed to use the telephone; that offensive odors from poultry and stock cars standing on the tracks penetrate the houses, and that at times from 100 to 200 people are waiting to cross the tracks when they are obstructed.

The only question involved is the validity of the ordinance. The law authorizes the city to declare what shall be a nuisance, but this does not authorize it to act arbitrarily and declare that to be a nuisance which is not, in fact, a nuisance. (*Village of Desplaines* v. *Poyer*, 123 Ill. 348.) Some things are in their nature nuisances and are so recognized by the law. Other things are of such a character that in their nature they may be nuisances but as to which honest differences of opinion may exist among men of impartial minds as to whether they are actually nuisances or not. The maintenance of slaughter-houses or livery stables, the depositing of offal and of the carcasses of dead animals within the city, or the obstruction of sidewalks for the display of merchandise, are of this class. In this class of cases the exercise by the city of the legislative authority to declare what shall be a nuisance is conclusive of the question. If it declares the thing a nuisance it is a nuisance. (*North Chicago City Railway Co.* v. *Town of Lake View*, 105 Ill. 207; *Harmison* v. *City of Lewistown*, 153 id. 313; *Laugel* v. *City of Bushnell*, 197 id. 20.) In another class are those things which in their nature are not nuisances but which may become nuisances by reason of their locality, surroundings or the manner in which they are conducted. The city has no power to declare conclusively such things to be nuisances but can only declare such of them to be nuisances as are in fact so. (*Village of Desplaines* v. *Poyer, supra*; *Laugel* v. *City of Bushnell, supra*; *Sings* v. *City of Joliet*, 237 Ill. 300; *Yates* v. *City of Milwaukee*, 10 Wall. 497; *City of Evansville* v. *Miller*, 146

Ind. 613; *City of St. Louis* v. *Heitzenberg Packing and Provision Co.* 141 Mo. 375; *City of Denver* v. *Mullen,* 7 Colo. 345; *Grossman* v. *City of Oakland,* 30 Ore. 478; *City of Helena* v. *Dwyer,* 64 Ark. 424.) In *Yates* v. *City of Milwaukee, supra,* it is said: "It is a doctrine not to be tolerated in this country that a municipal corporation, without any general laws, either of the city or the State, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business and all the property of the city at the uncontrolled will of the temporary local authorities."

The tracks of the railroad company are located upon its private right of way and lawfully cross the city's streets at their intersections with the right of way. It is not contended that such occupation of the street intersections is a nuisance or could be declared to be such. A railroad, having acquired a right to the use of the streets of a city, can not be required to take up its tracks or abandon the use of the streets by the declaration of the city council that the operation of its railroad is a nuisance. (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25; *City of Chicago* v. *Chicago and Oak Park Elevated Railroad Co.* 250 id. 486.) The operation of the railroad is a lawful business, and if it enters the city it must cross the streets not only with its main tracks but with its side-tracks. The switching of cars and the use of locomotive engines for that purpose are necessary for the transaction of its business, and neither the existence of the side-tracks, nor their use in switching, nor the use of locomotives for that purpose, can be prohibited. The city has the authority, in the exercise of the police power, to regulate the manner of using the switch tracks so that they shall not be operated in a manner dangerous to the lives or limbs of persons using the streets, so that public travel and the use of the streets

shall not be unreasonably interfered with, so that the community in the vicinity of the railroad shall not be put to unreasonable inconvenience in the use and enjoyment of their property. It is the alleged use of the switch tracks in such a manner as to produce such public inconveniences which is the evil sought to be remedied. The remedy must be reached, not by the destruction and removal of the switch tracks, which are lawfully located, but by the regulation of their use. Under this ordinance it is unlawful for the railroad company to switch a car for loading or unloading to its freight house on its private right of way in the business district under any circumstances and without reference to the condition or manner in which it is done. Switching, alone, the ordinance makes the test and not the public inconvenience or danger.

Counsel for the plaintiff in error say that the matter complained of and penalized by the ordinance is a public nuisance. The matter penalized by the ordinance is the maintenance and operation of the switch tracks. The city, however, was not content to prove that the railroad company maintained switch tracks within the prohibited territory and operated them. It did not claim to be entitled to judgment on proof of the ordinance and its violation, and manifestly it would not be entitled to such judgment, for it is conceded that the mere facts of the lawful existence of a side-track in a street, and its use, do not constitute a nuisance. Then the city went on to prove, not that the thing denounced by the ordinance as a nuisance,—that is, the maintenance and use of the side-tracks,—was a nuisance, but that the manner of their use so as to cause an obstruction and congestion of street traffic for from one-fifth to one-third of the time, to obstruct the view of approaching trains, to increase the danger to the public at the crossings, and to inconvenience and damage the public and the property in the neighborhood by the excessive noise, confusion, dust, smoke and dirt, created a nuisance. The

concession that such proof was necessary is practically an admission of the invalidity of the ordinance, under the decision in *Village of Desplaines* v. *Poyer, supra.* In that case it is said of public picnics and dances, which were the subject matter of the ordinance there in question: "When conducted with proper decorum and circumspection, and remote from public thoroughfares, it is impossible to conceive how any public injury or annoyance can result. That the manner of conducting them may be productive of annoyance and injury to the public is not to be questioned, but since the nuisance must consist in this, and cannot consist in the mere fact that there is a picnic or dance, the ordinance should be directed only to it."

The ordinance here in question also declares that to be a nuisance which is not a nuisance but which may become a nuisance under certain circumstances. The ordinance should be directed against the circumstances which are harmful, and not against the switch tracks, which are not. The ordinances which were considered in *City of Evansville* v. *Miller, supra,* and *City of St. Louis* v. *Heitzenberg Packing and Provision Co. supra,* were subject to the same objection. In *City of Chicago* v. *Union Stock Yards and Transit Co.* 164 Ill. 224, we said (p. 236): "We agree with counsel for appellee that a distinction must be taken between the structure itself and the use to which it has been put. The unlawful use may be prevented without destroying the structure which has been lawfully erected. The power in the city to abate nuisances is not denied, but it does not follow that the city may, as the easiest way to abate the nuisance, destroy valuable private property susceptible of use for a lawful purpose."

The ordinance contained a preamble which recited the manner in which the use made of the side-tracks was productive of public injury and annoyance, but this amounted only to a statement of the reasons which induced the passage of the ordinance. The ordinance did not denounce

the operation of side-tracks in the manner mentioned in the preamble as a nuisance but declared any use of side-tracks within the prohibited territory a nuisance. If valid, the ordinance became a law within the municipality, and it was not a question of fact whether the use made of the side-tracks in fact constituted a nuisance, but the mere maintenance or any use of a side-track within the prohibited territory became unlawful. The power of the city council did not go to this extent, but only to the extent of declaring under what conditions the maintenance or operation of side-tracks should be regarded as a nuisance. Whether such conditions were reasonable would be a question of law; whether the side-tracks were maintained or operated under such conditions a question of fact. An ordinance could not be valid which declared a certain thing to be a nuisance and yet left it to the jury to determine, from the evidence in each case, whether that thing was or was not a nuisance.

Counsel for the plaintiff in error have cited numerous cases in which private suits have been maintained for damages occasioned by the carrying on of various kinds of business of a useful or even necessary character. They include slaughter-houses, soap factories, lime-kilns, the storing of gunpowder, petroleum or nitroglycerine, brick burning, a tannery, a livery stable, gas works, railroad stock yards, switch yards, a railroad round-house, and many other things which, under the circumstances of the respective cases, were offensive, dangerous or injurious to neighboring property. In other similar cases injunctions have been granted. In some of these cases, no doubt, the facts showed a public nuisance, in others a mere private nuisance; but in any event they have no bearing on the question here, which is the right of a city to declare what shall be a nuisance. The fact that damages may be recovered by a property owner who is injured by a structure or business does not show such structure or business to be a public nuisance. A rail-

road built and operated by authority of law cannot be held to be a nuisance although damages occasioned by it to adjoining property may be recovered. *Chicago, Milwaukee and St. Paul Railway Co.* v. *Darke,* 148 Ill. 226.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE FARMER, dissenting:

I do not clearly understand the opinion of the court in this case. If it was intended to hold that, no matter what use the railroad company makes of its switch yards and sidings in the business district, and no matter what effect such use has upon the public safety and convenience and upon the use and enjoyment by neighboring owners of their property, the city council is powerless to stop it, I cannot agree to it. I know of no special rights or privileges possessed by common carriers which authorize them to maintain a nuisance. It seems to me the proof in this case established that the use made by the railroad company of its switch yards and sidings in the heart of the city and across public streets where the travel was heavy was a nuisance. If this is correct, it would seem the situation could not be remedied by regulation. The remedy against nuisances, as I understand it, is abatement,—not regulation; and it seems apparent that no regulation short of abatement could relieve the situation in this case. Any regulation that would be effective would, it seems to me, prohibit the use of the yards and sidings for the purposes for which they are maintained. Certainly, as stated in the opinion, the sidings and yards are not *per se* a nuisance but their use may become a nuisance. A building erected for a slaughter-house may not, in itself, be a nuisance but its use may make it one. The ordinance here involved does not attempt to deprive the railroad company of its right of way or tracks, or of their use, except in the operation of switch tracks or sidings for the setting out, switching, storing of freight cars, making up freight trains, and the loading or unloading of

freight cars and freight trains within the business district. The mere declaration of the council that this constituted a nuisance was not conclusive. Defendant in error's switch yards and tracks belong to that class of things which may or may not be nuisances, by reason of their locality, surroundings or the manner in which they are conducted and managed. That class of nuisances cannot be summarily abated by the municipality. The validity of an ordinance declaring things in that class nuisances presents for judicial determination a question of fact. That the business of maintaining and operating switch yards and tracks is a lawful business and when established was not a nuisance, does not signify that it cannot become such by reason of changed conditions and surroundings. Authorities are abundant holding that many kinds of lawful business which as originally established were not nuisances have subsequently become so by reason of changed conditions and surroundings.

The rules of law upon this question which apply to those who are engaged in other lines of business are applicable to public carriers. The rule that every proprietor has the right to erect upon his property such structures as he pleases and use his property for such purposes as he sees fit is subject to the qualification that he cannot, by such use, deprive another person of the use and enjoyment of his property. That a railroad company is subject to this qualification was decided in the case of *Wylie* v. *Elwood*, 134 Ill. 281, where it was said: "Railroads are a public necessity and a public benefit. Many inconveniences and annoyances grow out of their operation which must be borne by the public. The passage of a train of cars upon the street of a city or town is necessarily attended with noise, with the emission of smoke, with detention at the crossings, etc. No recovery can be had for injuries suffered from such causes. But a railroad company has the power to do certain things, which it has also the discretion

259 – 26

to do in particular ways and at particular places. It needs grounds upon which it may receive and discharge its freight and passengers. It may use its right of way for such purposes. Its discharge of a certain kind of freight at one place upon its right of way may work serious injury to property owners, while its discharge of the same at another place thereon may not produce any such injury. The selection of a locality where damages are inflicted, in preference to one where damages will not be inflicted, cannot be said to be necessary to the ordinary and prudent operation of the road."

In the above case the court cited *Shively* v. *Cedar Rapids, I. F. & N. W. Ry. Co.* 74 Iowa, 169, being an action against a railroad company by a property owner to recover damages on account of the maintenance of stock yards near plaintiff's premises, the odors from which, it was alleged, made the premises almost uninhabitable and endangered health. The defense was that the yards were necessary to the operation of the road and that they were properly conducted. A judgment for plaintiff was sustained, and in the opinion the court said: "It is not shown that they [the odors] are unavoidable, nor does it appear that the yards might not have been located at another place where they would have met the necessities of the road and its patrons."

*Missouri, Kansas and Texas Railway Co.* v. *Anderson,* 36 Tex. Civ. App. 121, was an action by the plaintiff to recover damages resulting from the maintenance of railroad yards near his dwelling. The court said, in part: "The fact that the business is a lawful one and is properly and carefully conducted is no defense where it occasions a nuisance; and especially is this the case where a different locality could have been selected, which, if done, no injury would have resulted."

In *City of Hickory* v. *Southern Railway Co.* 141 N. C. 716, (53 S. E. Rep. 955,) the court said: "Railroads are chartered for the public convenience and are operated by

the exercise of a public franchise. Such exercise must be subordinate to the public welfare, and they are subject to public regulations as to their charges and conduct. If they exercise their functions in such a manner as to become a public nuisance they are liable to damages or to injunctive relief. The operation of their freight business, growing rapidly, as it is shown to do, in the center of a large and growing town, will necessarily impede and render dangerous the circulation of the business from one side of the town to the other. It necessitates the keeping of many box cars on the side-tracks and their constant shifting up and down, cutting off the view of approaching passenger and, indeed, of other freight trains. The jury has found this dangerous, inconvenient and a public nuisance. Indeed, we might almost say it would be a matter of common knowledge. If there are any good reasons why the defendant should have resisted the application of the town authorities and should not rather have anticipated the public wishes and convenience by removing its freight depot to a more suitable location they do not appear in this record." These general principles as to the relative rights of the railroad company and the city were not affected by the opinion delivered on a rehearing of that case, reported in 143 N. C. 451.

Plaintiff in error stated the fact to be, and offered to prove, that defendant in error owned a strip of land 200 feet wide in the corporate limits of the city, about two blocks south of its passenger depot, upon which no switch tracks were placed. On objection by defendant in error this proof was not allowed to be made. In the opinion it is said plaintiff in error on the trial proved, not that the thing denounced by the ordinance,—the maintenance and use of the side-tracks,—was a nuisance, but that their use in a manner to cause obstruction and congestion of street traffic, danger to the public at street crossings and damage to property in the neighborhood was a nuisance. Further it is said: "The ordinance should be directed against

the circumstances which are harmful, and not against the switch tracks, which are not." If this means that the ordinance should have recited the effects or results from the operation of the switch yards and denounced those "circumstances" as a nuisance, it appears to me to be unsound. There would have been no "circumstances" to denounce if the yards and tracks had not been used for the purpose forbidden by the ordinance. It was the resultant effect of that use that made the doing of the things forbidden a nuisance, if it was a nuisance, just the same as the odors from a slaughter-house may make it a nuisance to operate it. But the ordinance did, in its preamble, denounce or recite the "circumstances." After describing the territory embraced in the business district, the location of the streets and kinds of business carried on in said district by the inhabitants of the city, and the location of defendant in error's switch yards and sidings in said district, it stated how the switch yards and sidings were used, how the use of them interfered with and hindered people in the use of the streets, endangered life and safety, and how it interfered with neighboring owners in the use and enjoyment of their property. Reciting or denouncing the "circumstances" in the ordinance did not relieve plaintiff in error from the necessity of proving facts on the trial which would authorize it being held that the ordinance was reasonable. If the facts failed to show the use of the switch yards and tracks in the manner prohibited was a nuisance then the ordinance would be void for unreasonableness. The question presented for decision by this action was whether the city council had exceeded its powers in declaring the use of the switch yards and sidings for the purposes mentioned in the ordinance a nuisance. After making the proof referred to in the opinion the city offered the ordinance. If the facts proved established that the use of the yards and sidings was a nuisance the ordinance was reasonable and valid, otherwise it was unreasonable and in-

valid. Plaintiff in error by its evidence laid before the court the facts which led it to adopt the ordinance. It seems to me this was the orderly and lawful method of procedure; that the ordinance is valid in form, and the question that should be decided by this court is whether, under the proof, the ordinance was a valid exercise of power by the council.

I think the judgment should be reversed for the refusal of the trial court to admit the ordinance in evidence.

Mr. JUSTICE VICKERS: I concur in the foregoing dissenting opinion of Mr. Justice Farmer.