Gastcn, J.
 

 The object of this bill is to enjoin the defendant from erecting a mill on a branch of a creek, running through his land, in the county of Edgecomb. The plaintiff alleges, that the erection of the proposed mill would pond the water back and cause it to overflow a considerable part of his land, and prove utterly destructive to the health of himself and his family, and highly injurious to that of several of the neighbors. The defendant admits that the erection of the mill will cause the water to overflow a part of the plaintiff’s land, which he alleges to be unfit for cultivation, insists that the mill is called for by the wants of the community, and utterly denies that its erection will produce any injury to the health of the plaintiff or his family, or to
 
 *200
 
 that of any of his neighbors. Thirty-eight witnesses have ^een examined, and we have not only heard all these depositions read, but have deliberately read them afterwards, in our chambers. It is unnecessary to state them
 
 minutely,
 
 but the material facts', which we collect from them, are as follows:
 

 The tracts of land of the plaintiff and the defendant are situated in the fork of a creek, and, on the south side of that branch of the creek, on which it is proposed to erect the mill. Their dwellings are about 150 yards apart, each about half a mile from the run of the branch, the plaintiff’s higher up the branch than the defendant’s. At the proposed mill-site, which is nearly opposite to the defendant’s dwelling, a dam was raised, upwards of fity years ago, by an ancestor of the defendant, as preparatory to the erection of a mill;' but he was prevented from completing his purpose by a want of means, or a supposed want of means; and the place left in the dam for the mill was never closed, and the water consequently not ponded back by the dam. The mill, to be useful, should have a head of seven or eight feet of water,,and, to obtain this head, the water must be ponded back about a mile, and made to cover about thirty acres of land. This land is now low and wet, with a growth of Gum and Oaks; and more of it belongs to the defendant than to the plaintiff. The water, by being thus ponded, will be brought to within 700 yards of the plaintiff’s dwelling, and, in one place, where there is a short depression or ravine, to within five hundred yards thereof. A good mill there erected would be a public convenience, especially to those neighbors who live on the north side of the branch, and seems to be generally desired by them; but doubts are entertained by several of the witnesses, whether a
 
 mill
 
 can be made to stand permanently at that place.
 

 On the question
 
 hou> fa?'
 
 the erection of the proposed mill would pro>e injurious to the health of the plaintiff and his family, or to that of his neighbors, we are furnished with testimony of two kinds, The first consists of the opinions of witnesses derived, as they declare, from their observation and experience. Upon these, it is impossible to arrive at
 
 *201
 
 any certain conclusion. Many declare their decided conviction that it will be exceedingly pernicious to the health of the plaintiff’s family and that of the neighbors, while on equal number at least, express, with great confidence, the opinion that it will be perfectly harmless in this respect. Two medical gentlemen depose that newly erected mill* ponds generate poisonous miasma, because of the decomposition of the trees killed by the standing water; that this miasma is far more injurious to residences on the north than on the south side of ponds, because of the general prevalence of southerly winds in the summer season, and that physicians are not agreed as to the extent to which this miasma will reach, some holding that it will not be injurious beyond a quarter of. a mile, while others teach that its deleterious effects will be'felttwo miles off.
 

 Upon the whole, we confess that the strong-leaning of our opinion is with those, who think that the apprehensions of the plaintiff are not without foundation. But we do not, on that account, feel ourselves authorized to grant the extraordinary remedy, which he asks of us. Wo entertain no doubt of the right of this court thus to act in cases of undoubted and irreparable mischief, and we hold that it may thus act upon the application of individuals, not only in the case of a private nuisance, but, where the individuals suffer special injury, in the case of a public nuisance also.
 
 Spencer
 
 v
 
 London and Birmingham Rail Road Company,
 
 8 Simons 193. But it will only act in a case of necessity, where the evil sought to be prevented is not merely probable, but undoubted. And it will be particularly cautious thus to interfere, where the apprehended mischief is to follow from such establishments and erections, as have a tendency to promote the public convenience. No one can read our statutory provisions on the subject of erecting public mills, and, declaring the remedy for persons injured by-the erection of public grist-mills, or mills for domestic manufactures or other public purposes, and fail to see that the Legislature has manifested a strong disposition to favor them. It would ill accord with the duties of the ministers of law to act counter to the policy of the makers of the law.
 

 
 *202
 
 If the plaintiff indeed were without other remedy, we shouldfeel ourselves bound to interpose in his behalf; for the act contemplated by the defendant is an admitled wrong. The defendant has no right to oversow the plaintiff’s land. But the plaintiff is not without remedy. He can prefer his petition at law, and on the trial he will be entitled to recover damages, not only for the direct injury of overflowing his land, but for the injurious effects therefrom resulting to health. And it is specially provided by the statutes referred to, that, if the annual damage be estimated by the jury as high as twenty dollars, the plaintiff may, by repeated actions, compel the defendant to takedown his mill.
 

 This legal remedy will probably prove efficacious for every legitimate purpose, and to this remedy we must leave the plaintiff.
 

 The- bill must be dismissed, but, as we think, without costs.
 

 Per Curiam,. Bill dismissed without costs.