MORGANTON LAND AND IMPROVEMENT COMPANY v.
T. M. WEBB et al.

*Trespass—Injunction — Irreparable  Damage—Pleading.*

1. If a threatened injury can be compensated for in damages, injunctive relief will not be granted, but if it is such as can not be atoned for or if, in case of trespass, the trespasser is insolvent and unable to respond in damages, a court of equity will interfere by injunction to prevent it.

2. Where defendants, claiming the right under statute to drain
    the lowlands of a creek, commenced to cut a canal for that
    purpose whereby a small portion of a large tract of land
    belonging to plaintiff would be cut off and plaintiff sought
    to enjoin the cutting of the canal on the ground of irrepara-
    ble damages, alleging that defendants were trespassers and
    that the portion cut off was,intended as a park to be attached
    to a hotel site and derived its chief value from its picturesque
    surroundings, and that it would be rendered less valuable
    by the proposed canal, but there was no allegation that the
    hotel would soon be built, or that the cut off would be an
    attachment thereto, or that the defendants were insolvent;
    *Held*, that the petition did not state facts sufficient to justify
    the grant of an injunction.

This was an application by the plaintiff for the con-
tinuation of an injunction heard before his Honor, *Bryan,
J., at Chambers* in Morganton, N. C., on August 24th,
1895. His Honor, after considering the pleadings, affi-
davits and arguments of counsel, refused the motion for an
injunction and dissolved the restraining order, and plain-
tiff appealed.

The grounds upon which the injunction was asked are
stated in the opinion of Chief Justice FAIRCLOTH.

*I. T. Avery* and *M. Silver*, for plaintiff (appellant).
*J. T. Perkins* and *S. J. Erwin*, for defendants.

FAIRCLOTH, C. J.: This is an action of trespass on land
and an application for injunction to prevent· an irrepara-
ble damage. The ownership of the land in the plaintiff
is admitted and the alleged entry also, and the defendant
avers authority to do so under the Act of Assembly 1879
Ch. 146, for the better drainage of the low lands of Silver
Creek, which enters the Catawba river on its South side.
The waters of the two streams flowing in nearly opposite
directions cause the water of the creek to back up stream
and overflow the lowlands.

Opposite the *locus in quo* is an island in the river. The plaintiff's contention is that the two streams surrounding the island compose the river, whilst the defendant insists that the creek curves near the upper end of the island and empties into the river below the lower end of the island and below the mouth of the proposed canal, which is proposed to be 70 yards long, 40 feet wide and 15 or 20 feet deep. This canal cuts off about three fourths of an acre of the sandy tongue of land lying between the said waters, which is part of a 60 acre tract of land belonging to plaintiff.

The plaintiff, in aid of its allegation of irreparable injury, says that it holds said land "with a view to using the same for a park to be attached to hotel site on said land, and it derives its chief value from its picturesque surroundings—and that it will be disfigured and rendered much less valuable." The court below required the defendant to file a good bond in the sum of $1,000 to meet any damage ascertained at the final hearing and discharged and vacated the preliminary injunction. Since the case was filed in this court an affidavit has been filed stating that the canal has been finished and that the waters of the creek are now running through the canal. If this be so, any further action by this court would be a vain proceeding. In order to dispose of the present contention however we will consider that the canal is not finished. Then, will the act complained of result in an irreparable injury? What kind of trespass is remedied by compensation and what kind by an injunction to prevent it has frequently been decided in this Court. The rule is that if the threatened injury can be compensated in damages, then injunctive relief will not be given, but the parties will be left to work out their grievances in a court of law. If the prospective injury is such as cannot be atoned for in damages,

or, if in case of an ordinary trespass, the trespasser is insolvent and unable to respond in damages, then injunctive relief will be granted in order to prevent injustice in any event.   The *peculiar* jurisdiction of a court of equity will be exercised only when the legal remedy does not furnish an adequate remedy, and the nature of the subject matter must be considered.   Irreparable injury means that which cannot be repaired, retrieved, put back again, or atoned for.   The injury must be of a *peculiar* nature, so that compensation in money cannot atone for it.   If grass be cut in the field and sold; if trees in the woods be cut for timber, staves or shingles, and sold, damages may be recovered for their commercial value, and in that way the injury is retrieved and atoned for.   If however the oak, standing upon the resident lot, affording shade and comfort, be cut down, it cannot grow again, and damages for its commercial value be recovered, that does not satisfy or atone for its ornamental value, nor for its picturesqueness so much cherished by its owner, with which no one should interfere, and preventive relief will be given.   In the case before us, the allegation is general and prospective. It does not certainly appear that a hotel will be built or that the point of land would ever be an ornamental or necessary attachment thereto.   When special remedies are asked for, specific facts should be set out.   In the mind of the legislature, the object is for public benefit, and the question of damages will be inquired of at the hearing.

There is no allegation here of insolvency, and the real mouth of the creek will be located at the trial in the appropriate way.   *Gause* v. *Perkins*, 3 Jones Eq. 177; *Frink* v. *Stewart*, 94 N. C., 484.

AVERY, J., did not sit.                          No error.