CITY OF DURHAM v. ENO COTTON MILLS.

(Filed 27 May, 1907).

1. Sewerage — Revisal, Sec. 3051 — Construction. — The meaning of
   "sewerage," under Revisal, sec. 3051, is confined to the liquid and
   solid matter flowing from the water-closets through the sewer
   and drain; and as to this an injunction will issue without proof
   as to any injurious effects upon the water supply at the intake
   of the plaintiff's water system.   Dyestuff or fecal matter from
   privies, which were not passed through defendant's sewer to
   the river from which defendants received its water supply, does
   not come within the meaning of the act.

2. Same—Injunction—Nuisance—Uncertainty.—Equity will not re-
   strain a private nuisance that is merely dubious, possible or con-
   tingent.   When the plaintiff city seeks to enjoin defendant from
   injuriously polluting a river from which it draws its water sup-
   ply, under Revisal, sec. 3862, declaring it unlawful to corrupt or
   pollute a stream which is the source of supply to the public of
   water for drinking purposes, and under section 3052, declaring
   it unlawful for an industrial settlement not to have a system

144—45

of sewerage or to provide and maintain a tub system for collecting and removing human excrement from the slope of any public water supply, it must show special damage, or that such condition rendered the water unfit for the usages to which it may be applied.

3. Same—Statutory Amendment—Relief.—An amendment made to Revisal, sec. 3052, since the institution of an action thereunder, by striking out all after the word "maintain," in line five, and inserting in its place the following: "A system for collection and disposing of all accumulations of human excrement within their respective jurisdictions or control, at least once each week, by burning, by burial, or some other method approved by the State Board of Health," may be taken advantage of by the defendant.

4. Practice—Appeal—Power of Court—Correcting Erroneous Judgment.—When the Supreme Court reviews a judgment entered by the Court below, supposed to be in conformity with a former order, but erroneous, it is proper, in setting aside the judgment, to direct the proper order to be made in accordance with its declared purpose in the former appeal, when the case is in its interlocutory stage and nothing has been done to prejudice either party.

CIVIL ACTION, heard upon a motion for an injunction before *Justice, J.,* at March Term, 1907, of the Superior Court of DURHAM County. From a judgment for the plaintiff the defendant appealed.

This case was before the Court at a former term and is reported in 141 N. C., at p. 615. When the case came on to be heard at March Term of the Superior Court it was adjudged that the injunction issued by *Judge Ferguson* be made perpetual. There was no trial by jury and no waiver thereof in writing by the parties, nor was there any additional findings of fact made by the presiding Judge. The judgment perpetuating the injunction was based entirely upon the findings of *Judge Ferguson,* his order and the opinion and order of this Court.

The defendant excepted to the judgment of the Superior Court on the ground that section 3051 of the Revisal em-

braces only sewage and that the flow of that only can be enjoined. That dyestuffs are not embraced by the statute, and the commission of the defendant's acts in respect to them is not *per se* a nuisance and not enjoined, and, if this is so, the defendant has the right to a trial by jury upon the issues raised by the pleadings. The defendant did not then demand a trial by jury, but reserved its right to the same. The Court offered to allow the defendant a trial by jury, but the offer was refused. The defendant also excepted because section 3052 of the Revisal has been amended by the act of 1907, and by that amendment the plaintiff has no longer any right by injunction to enforce the use of the tub system alone and to restrain the deposit of fecal matter, which is not sewage, in any other way than is provided by the law as it now is. From the judgment the defendant appealed.

*R. P. Reade* and *Fuller & Fuller* for plaintiffs.
*John W. Graham, S. M. Gattis* and *Frank Nash* for defendant.

WALKER, J. It would have been better and more in accordance with correct procedure if the defendant had accepted the offer of a jury trial and raised the question now made at the final hearing, when all of the disputed facts would have been settled and the case disposed of upon its merits. We directed the injunction or restraining order of *Judge Ferguson* to be continued only to the hearing, and it was error in the Court below to continue it perpetually. In this respect the judgment should have followed exactly the order of this Court. As the answer came in after our decision was rendered, his Honor perhaps was of the opinion that the admission of the defendant therein that it did dispose of its dyestuff and maintain the privies as alleged in the complaint, though it denied that the water of Eno River at the Durham intake was polluted thereby, was sufficient to warrant a per-

petual injunction, as the dyestuff and the fecal matter from
the privies are to be considered as "sewage" within the mean-
ing of section 3051 of the Revisal, or that, by sections 3045,
3052 and 3862, the acts of the defendant with respect to
them were prohibited to such an extent as to give the plaintiff
a right to an injunction without first showing that by reason
of the said conduct of the defendant with respect to them
the water of the stream was actually contaminated at the
intake.    Neither of these views was the correct one.    We do
not think that the dyestuff or the fecal matter from the
privies, which was not passed through the defendant's sewer,
could be regarded as sewage within the intent and meaning
of section 3051.    It is confined, under the facts of the case,
to the liquid and solid matter flowing from the water-closets
through the sewer and drain to the river, and that was our
conclusion at the former hearing of this case, as is apparent
from the opinion.    Some courts have construed "sewage" to
mean excreted, as well as waste, refuse or foul matter, carried
off in sewers and drains, whether open or closed, by the water
flowing therein.    *Morgan v. Danbury,* 67 Conn., 484; *Win-
chell v. Waukesha,* 110 Wis., 101; *Clay v. Grand Rapids,*
60 Mich., 451.    In *Sutton v. Mayor,* 27 L. J. (Eq., 1858),
741, the *Vice-Chancellor* says that, "in the common sense of
the term "sewer" it means a large and generally, though not
always, underground passage (or conduit) for fluid and fecu-
lent matter from a house or houses to some other locality,"
usually the place of discharge.    Other courts have defined
a sewer to be a closed or covered waterway for conveying and
discharging filth, refuse and foul matter, liquid or solid,
while ditches are drains which are or may be open and so
arranged as to take away surface water.    *State Board of
Health v. Jersey City,* 55 N. J. Eq., 116; 7 Words and
Phrases, 6457, *et seq.*    Whatever may be the true and defi-
nite meaning of the word, if it has one, either generally or

when ascertained from its use in any given connection, we think the Legislature did not intend, when the word was used in section 3051, that it should embrace dyestuff and feculent matter other than sewage from the water-closets in the mill, as the defendant dealt with them, but only such deleterious matter as was carried by conduits of some kind into the river or other source of public supply, and would, therefore, in such large and concentrated quantities, most probably, if not necessarily, pollute the stream at the intake. It seems from the finding of *Judge Ferguson* that the defendant, once in each week, "hauled off and buried" the excrement from the open privies of its operatives, but it is also found that not only the dyestuffs, but the feculent matter from the open privies, are washed into the river by the surface drainage and contaminate the same. However this may be, we are satisfied that the Legislature did not intend to include within the prohibition of section 3051, under the name of sewage, any matter carried into the supplying water-course by mere surface washing.

It is true that by section 3052 the failure of any industrial settlement, not having a system of sewerage, to provide and maintain a tub system for collecting and removing human excrement from the shed of any public water supply is declared to be unlawful and criminal, and is punishable as a misdemeanor, and it is also true that by section 3862 it is declared unlawful to corrupt or pollute any stream which is the source of supply to the public of water for drinking purposes, and it is also made criminal and punishable as a misdemeanor. The acts and omissions thus described in those two sections may be public nuisances, but even if they are, the plaintiff is not entitled to an injunction in respect to them, unless it can show special damage or such a pollution of the river as would render the water at the intake near Durham, and not merely at the outlet near Hillsboro, unfit for the uses to which it may be applied. The plaintiff must

make out a case not of theoretical and possible, but of actual and real, injury, present or certainly impending. The Court, when stating the governing principle of such cases in *Brookline v. Mackintosh,* 133 Mass., 215, said: "The plaintiff contends that the statute, in prohibiting drainage or refuse matter from being put into the river so as to corrupt or impair the quality of water, makes it an offense to do so not only where the water supply is taken, but also at or near the factory, and that the evidence shows that the water is there corrupted. Even if this construction is correct, which we do not decide, the plaintiff cannot ask an injunction on that account, as such corruption at that place would not be an injury to it as a private nuisance, even if it might be to others, or even if, as a public nuisance, it is remediable by indictment." The Court further held it not sufficient to show, at the time of applying for the injunction, that injury may be done which cannot be proved by analysis of the water. "Apprehended danger is indeed a ground for issuing an injunction, but it must be apprehended upon a state of facts which shows it to be real and immediate," page 227. To the same effect is *Baltimore v. Warren Manufacturing Co.,* 59 Md., 96, where the Court, by *Alvey, J.* (one of the greatest of American jurists), says, that the water must be defiled in such manner and to such extent as to operate an actual invasion of the rights of the complainant. The alleged wrongful act must be prejudicial to the lower riparian proprietor, who is interested in having the water descend to him in its ordinary natural state of purity. "Any use," says the Court, "that materially fouls and adulterates the water, or the deposit or discharge therein of any filthy or noxious substance that so far affects the water as to impair its value for the ordinary purposes of life, will be deemed a violation of the rights of the lower riparian proprietor, and for which he would be entitled to redress. Anything that renders the water less wholesome than when in its ordinary

natural state, or which renders it offensive to taste or smell, or that is naturally calculated to excite disgust in those using the water for the ordinary purposes of life, will constitute a nuisance, for the restraint of which a court of equity will interpose." In that case the plaintiff had dammed the Gunpowder River, thereby forming a lake or reservoir, from which the water was taken and conducted into the city of Baltimore through mains, where it was distributed. The alleged grievance, as in this case, was that the defendant discharged from its factory and caused to flow into the stream refuse water impregnated with divers injurious ingredients and substances, by means of which the water of the river was polluted and rendered less pure and less fit for drinking purposes. The Court refused an injunction, as it was not shown by proof, nor did it appear by the bill, that the purity of the water in the lake or reservoir had been impaired to any extent by the acts of the defendant. The law has for many years been settled in this State that "for any of those acts which are in the nature of a public nuisance no individual is entitled to an action unless he has received extraordinary and particular damage not common to the rest of the citizens, as if a man suffer an injury by falling into a ditch dug across a common highway." *Dunn v. Stone,* 4 N. C., 241; *Gordon v. Baxter,* 74 N. C., 470; *Barnes v. Calhoun,* 37 N. C., 199. The principle rests, says the Court, upon the distinction between a public wrong, to be redressed by indictment, and a private wrong, to be redressed by civil action. It is equally well settled by our cases that equity will not restrain a private nuisance that is merely dubious, possible or contingent. The Court must first be informed that its actual effect will be injurious to the complaining party. *Ellison v. Commissioners,* 58 N. C., 57; *Dorsey v. Allen,* 85 N. C., 358; *Vickers v. Durham,* 132 N. C., 880; *Reyburn v. Sawyer,* 135 N. C., 328; *Barnes v. Calhoun, supra.*

We held before that the testimony, as to the actual pollution of the stream at the reservoir or place where the water is taken and forced into the main for the purpose of being carried to the city, was not of a satisfactory character, nor did it sufficiently show the imminence of danger to the health of the community using it; that is, if the suit is considered as one to suppress and enjoin a nuisance and to be decided upon the general principle applicable to such cases, and not merely as one brought under the statute to secure protection against a threatened and menacing injury by the discharge of sewage into the stream, the remedy by injunction being specially given "to any person" by section 3051.

We did not mean to say, and did not, in fact, say, in the former appeal, that expert or scientific evidence would not be considered in determining whether a private nuisance or injury was sufficiently imminent to warrant the interference of the Court by issuing an injunction to prevent it, and we must not be understood as so ruling; but what we did say, and what we intended to decide, was that the testimony in this case is not of that satisfactory character which courts of equity require in cases of this kind, and under the facts and circumstances as they appear in the record, having specially in view the facility with which the plaintiff could have furnished proof more reliable and of greater weight, if it had been so minded. Indeed, the statute requiring chemical, biological, and bacteriological analyses to be made periodically by an expert State officer appointed for that purpose convinces us that the plaintiff has not presented to the Court the best attainable proof of the fact it alleges to exist, but instead has offered mere opinion evidence, based on disputed facts. It may be that the plaintiff can prove its case without the aid of a demonstration by actual analysis of water specimens drawn from its faucets or from the river at the intake or at other places along the stream, but the excuse for not producing such an

DURHAM *v.* COTTON MILLS.

analysis has not been shown, and in the absence of any good reason dispensing with its production we consider the proof as it now stands insufficient as the basis for a provisional injunction, treating this as an action to enjoin a mere nuisance.    As to sewage from the water-closets in the mill, which is discharged into the river at Hillsboro, we have already said in our former opinion that the injunction should issue without proof as to any injurious effect upon the water at the intake, because the Legislature, in the exercise of a rightful authority, has so provided (Rev., sec. 3051), it being an act so manifestly dangerous to the public as not to come within the principle allowing compensation for property taken for public use.    If this is not so, where shall we draw the line?    Shall we jeopardize public health by stopping to inquire whether the act is actually injurious?    This same argument in favor of private right might be made in the case of any structure, however plainly a menace to public health or safety—for example, a powder magazine or any other depository for a deadly explosive.

It was not intended by citing the English decisions to justify the constitutional argument, but merely to show how the courts of that country had construed such statutes.    Our construction of that section of the Revisal we find directly and clearly supported by the case of *Board of Health v. Paper Co.,* 63 N. J. Eq., 111, where a similar statute was considered by the Court.    As to the other acts of which the plaintiff complains, we do not think they are covered by that section, and, therefore, as to them, the plaintiff can succeed in this action only by showing at the final hearing that they constitute a nuisance specially injurious to them in the respect we have indicated, and that they are so interested, in a legal sense, as to maintain this action for the suppression of the wrong which they allege is thus being committed.    This was the opinion held by us when this case was here before, and the reasoning

of the opinion, we think, clearly so indicates; but in formu-lating the judgment we were not at the time sufficiently ad-vertent to the effect of our conclusion upon the ultimate rights of the parties with respect to the two different propositions involved, and for this reason, and also, perhaps, because the great stress of the argument had been laid upon the true con-struction of section 3051, the injunction was permitted, in affirming the order below, to have a broader scope than was really intended. We are not deciding upon the rights of the parties, as upon a final hearing, for we. do not adjudicate those rights, but merely remand the case for a trial of the issues raised by the pleadings. The case, therefore, is not within the principle of *Carter v. White,* 134 N. C., 469, and *Solo-mon v. Sewerage Co.,* 142 N. C., 439, which were cited by the defendant for the position that this Court is not bound by the former decision as settling the law of the case. It is not neces-sary to go further into this matter, as we will treat the excep-tion of the plaintiff as a motion to amend the former judg-ment, so that it may be restricted to the one the Court in-tended to enter, as appears by the opinion, or this Court may of its own motion correct the former entry in this respect to. make it express the true decision and judgment of the Court. There is full authority for the taking of this course. In *Scott v. Queen,* 95 N. C., 340, it appeared that the opinion of the Court clearly showed it to be its purpose to reverse the judg-ment below, whereas it entered an order for a new trial. On motion made here, at a subsequent term, that order was cor-rected and an order for reversal and remand substituted, so as to carry out the intention of this Court. So in other cases the entry has been changed from "reversal" to an "affirmance," from "new trial" to "remanded," and other modifications made so that the judgments should correspond with what this Court actually did decide. *Cook v. Moore,* 100 N. C., 294; *Summerlin v. Cowles,* 107 N. C., 459;.

*Scroggs v. Stevenson,* 108 N. C., 260; *Barnhardt v. Brown,* 118 N. C., 710; *Solomon v. Bates,* 118 N. C., 321. In most, if not all of those cases, it is held that the Court may proceed *ex mero motu,* though it is best to do so upon notice first served on the party to be affected by the amendment. See, also, *State v. Marsh,* 134 N. C., 184.

We distinctly stated in our former opinion that but for section 3051 of the Revisal we would be compelled to reverse the judgment below. That section relates only to sewage, and there was no contention that it embraced any of the alleged injurious acts of the defendant, except the maintenance of the system of sewerage connected with the mill and the discharge of the water-closets through the sewer into the river, the plaintiff, in respect to the other acts of the defendant, relying altogether upon the general principles of the law concerning nuisances and sections 3045, 3052 and 3862 of the Revisal. It is apparent, therefore, that the Court intended to order an affirmance as to the discharge of sewage into the Eno River, and a reversal as to the rest of the order of the Superior Court from which the appeal was taken. But we now have possession of the case by virtue of this appeal, and are reviewing a judgment entered by the court below in supposed conformity with our former order, though it is not so. It would seem entirely proper, in setting aside that judgment, that we should direct the proper order to be made in accordance with our declared purpose when we decided the former appeal, as the case will still be in its interlocutory stage and nothing has been done as yet that can prejudice either party.

The defendant filed in this Court a certified copy of an act of the last Legislature amending section 3052 of the Revisal by striking out all after the word "maintain," in line 5, and inserting in its place the following: "a system for collecting and disposing of all accumulations of human excrement

within their respective jurisdictions, or control, at least once each week, by burning, by burial, or by some other method approved by the State Board of Health," and its counsel contended that the defendant is entitled to the benefit of that provision in determining what is a compliance with the law in respect to the disposal of fecal matter which is not sewage; and so we think, if the question, in view of our present decision, is any longer a practical one. Whether the defendant is committing a nuisance in the disposal of fecal matter, not sewage, on its premises, which is specially injurious or detrimental to the plaintiff, or whether it has disposed of it as required by law, are questions to be determined by the principles we have already laid down and the existing statutory requirements, so far as they are applicable.

The former judgment of this Court is so modified as to affirm the order for an injunction made by *Judge Ferguson,* so far as it relates to the discharge of sewage from the defendant's water-closets in the mill into the river, and to reverse it in other respects. The judgment rendered at the last hearing in the Court below, and from which this appeal is taken, is set aside for error, with directions to submit the issues raised by the pleadings to a jury and to proceed further in the cause according to law.

Modified.