### TUCKER & CARTER ROPE COMPANY v. SOUTHERN ALUMINUM COMPANY.

#### (Filed 13 May, 1914.)

**1. Injunction—Public Interests—Damages—Restraining Order.**

A private enterprise to be conducted upon such large proportions as to beneficially affect the interests of the public will not be restrained to the hearing at the suit of a citizen, when it appears that a trial upon the merits of the controversy will doubtless be had before any of the damages alleged could accrue; that such damages can be adequately compensated for by the defendant, which is solvent and able to respond; or that injunctive relief may be later and timely granted should it then become apparent that it is necessary and should be afforded to protect plaintiff's rights.

**2. Injunction—Restraining Order—Act Not Commenced or Contemplated.**

Where an act sought to be enjoined does not appear to have been either commenced or contemplated by the defendant, there is nothing upon which a court of equity may proceed.

APPEAL by plaintiff from the refusal of *Long, J.,* to grant a restraining order to the hearing, heard at chambers, 30 March, 1914.

*Edwin C. Gregory* and *W. H. Page* for plaintiff.
*John S. Henderson* for defendant.

CLARK, C. J.　This is an action for a perpetual injunction to restrain the defendant from proceeding to construct across the Yadkin River at the "Narrows" its dam to a certain height which the plaintiff claims would pond water back on its mill and lands, and for a mandatory injunction to remove the "Whitney" dam which the defendant owns at another point on said river.

This appeal is from the refusal of the judge to grant an injunction to the hearing.

The plaintiff alleges that it owns a tract of land on said river on which it has a cordage mill, and that immediately below said tract the defendant owns the land upon both sides of the Yadkin River for 12 miles; that in 1907 the defendant's predecessor constructed a dam across the Yadkin River at Whitney, something more than a mile below the plaintiff's lower line; that in May, 1913, the defendant commenced to construct 5 miles further down the river a dam at the Narrows which will be probably 200 feet in height when completed; that the plaintiff's land at its southern boundary on the bank of the river is $524\frac{1}{10}$ feet above sea level; that the crest of the Whitney dam a mile or more below has an elevation above sea level of 529 feet; and that the crest of the defendant's proposed dam at the "Narrows," 5 miles or more below the Whitney dam, will be, according to its present plans, 545 feet; that the elevation of the plaintiff's present tail-race is 536 feet. The Whitney dam is nearly 1,000 feet long, but was never completed, and has an opening 150 feet wide, sufficient at normal flow to allow the free passage of the river waters, as the plaintiff admits.

We need not consider, at present, the allegations as to the Whitney dam, as the relief asked in regard thereto is a mandatory injunction and will depend upon the findings of fact by the jury, and this is an appeal from the refusal of a restraining order to the hearing in regard to the proposed "Narrows" dam. No work is being done or alleged as being proposed as to the "Whitney" dam.

· The plaintiff's land and water-power are listed for taxation at $20,000 (and $2,000 in personalty), upon which there are two

mortgages aggregating $35,000, and since this proceeding has begun it has made an assignment for the benefit of creditors. The defendant's enterprise is on a very great scale, and it appears from the affidavits that while it owns, it does not maintain or use, the dam at Whitney which the defendant alleges is 2 miles below the plaintiff's mill, and that 7 miles still further down the stream, at the Narrows, it is constructing three large factories for the manufacture of carbon, alumina and aluminum in enormous quantities, and a power plant for the generation of power both for its own works and to sell to the public. The defendant further alleges that the power to be thus developed by the defendant will be from 70,000 to 100,000 horse-power; that it is also building a town, known as Badin, to accommodate its employees and others, and operates two railroads; that it is expending over $10,000,000 in constructing its plant and is employing a great amount of labor in the development of its enterprise, and is a most important factor in the industrial progress and development of that section and in utilization of its natural resources.

The plaintiff claims: (1) That the old dam at Whitney so raises the level of the river *at flood times* as to damage the plaintiff's water-power and flood some 2 acres of its land. The defendant answers that at times of excessive flood the plaintiff's mill will be put out of commission irrespective of the dam at Whitney or the new dam at the "Narrows," and that the old dam at Whitney has no adverse effect on the plaintiff's property or power, and, besides, that the plaintiff is barred in regard to the Whitney dam by the statute of limitations. But as we have already said, this being an appeal from the refusal to grant an injunction to the hearing, and there being no work in process, or alleged to be in contemplation, as to the Whitney dam, we need not consider that branch of the litigation on this appeal.

The plaintiff further claims that at all times the new dam at the "Narrows," if raised to the height proposed, will flood a few acres of plaintiff's low lying property, and at flood time will damage its water-power.

The defendant replies that the new dam at the "Narrows" will not affect plaintiff's property adversely, except possibly to flood a few acres of its lowland, not its water-power or mill, said few acres being always flooded in times of high water.

The defendant also contends that equity will not prevent or interrupt a great enterprise from which the general public will largely benefit merely to protect a comparatively unimportant property right when any injury which may accrue to the latter can be compensated by an action at law for damages and the defendant is amply solvent. Certainly the courts will not by a restraining order pending the litigation stop the prosecution of a great enterprise when the allegations of the complaint are squarely denied by the answer, and when, though the complaint is found to be true, there will be ample remedy either by the recovery of damages or in requiring the defendant to abate the injury by reducing the height of its dam—in short, when the damages are neither certain nor irreparable.

Besides all this, it appears that the new dam will not be completed before 1 January, 1916. The plaintiff is, therefore, in no danger of injury, and least of all of irreparable injury, pending the suit, and there is no occasion for a temporary injunction which would injure the defendant infinitely more than could possibly benefit the plaintiff. The last consideration, of itself, is sufficient to justify the wisdom and justice of his Honor's action in refusing the injunction to the hearing. There is ample time before the expected completion of the new dam to have the disputed matters of fact determined by the jury, and the injunction to the hearing would be an useless and improvident interference with the prosecution of a great industrial enterprise.

There is no allegation in plaintiff's complaint that the construction of the new dam has advanced to a stage where it causes any present injury to the plaintiff, nor is there any evidence that it will do so before this case can be reached and tried on its merits. Equity will not interfere "when the anticipated injury is contingent and possible only." *Dorsey v. Allen,* 85 N. C., 358. "The court will not act upon speculative proof or such as

furnishes ground only for a conjecture." *Berger v. Smith,* 160 N. C., 212; *Durham v. Cotton Mills,* 144 N. C., 705; *Walton v. Mills,* 86 N. C., 280.

The defendant's dam is being constructed under express legislative authority, and is a lawful structure *per se,* and cannot be restrained as a public or private nuisance. If in the course of its lawful operation it may inflict injury upon the plaintiff, it is amply able to respond in damages. Whether the relief to which the plaintiff shall be entitled will be the recovery of damages or the abatement of the height of the dam is a matter which will arise when the facts are found; but certainly the courts will not stop the construction of the dam more than eighteen months before its completion, upon the allegation of the plaintiff, which is denied in the answer, that it will injure its property if built to the height that is proposed.

In *Eason v. Perkins,* 17 N. C., 38, the Court said, in refusing an injunction against the erection of a milldam: "Where a general convenience is involved, it constitutes the preponderating consideration, unless in itself it also produces a general mischief or no compensation is awarded for the invasion of private right. Compensation in this case is amply provided for by the inquisition of a jury upon the amount of damages."

We would not be understood as holding that a larger enterprise has a right to destroy a smaller one, but as was held in *Burnett v. Nicholson,* 72 N. C., 334; *Daughtry v. Warren,* 85 N. C., 137: "Inasmuch as private right must always yield to public convenience when compensated for so doing, the courts will never interfere when the object sought is of public benefit, unless the private injury should greatly exceed the benefits to be derived therefrom." To same effect, *Porter v. Armstrong,* 132 N. C., 66. In the present case the benefit to the public of this great enterprise immeasurably exceeds any conceivable private injury, and it is not alleged that the defendant is insolvent and unable to respond in damages. *Wilson v. Featherstone,* 120 N. C., 449; *Land Co. v. Webb,* 117 N. C., 478.

The defendant's answer squarely denies the allegations of the complaint as to the probable damages and injury that will ac-

crue. It appears from the plaintiff's statement that its mill floor is 544.4 feet above sea level and that the elevation of its tail-race is 536 feet. It appears that the new dam, against the construction of which the present injunction is sought, lies, according to the defendant's statement, 9 miles below the plaintiff's mill. While the defendant admits that according to its present plan the crest of the new dam will be 545 feet, it avers that those plans provide for two spillways by reason of which "the elevation of the water in its tail-race will be 526 feet, and *at no time* will the maximum elevation of defendant's pond be greater than 533 feet, which will be *more than 3 feet below* the elevation of the water in the plaintiff's tail-race, as alleged by plaintiff." As the plaintiff's mill is from 7 to 9 miles above the defendant's mill, it can hardly be possible that any damage will accrue by reason of the erection of the dam.

It appears that no damages will accrue to plaintiff from refusing the injunction to the hearing, but that serious detriment will be caused the defendant if it is granted. *R. R. v. Mining Co.,* 112 N. C., 661.

It is public policy not to interfere with the construction of works of public benefit, especially when the defendant is amply able to respond in damages and there is full time before the completion of the dam to have the disputed matters of fact passed upon by a jury. *Navigation Co. v. Emry,* 108 N. C., 130.

The action of his Honor was eminently proper in refusing the injunction to the hearing.

Affirmed.